# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 3, 2005 Session

## STATE OF TENNESSEE v. LINDA NELL CULVER

**Direct Appeal from the Circuit Court for Henry County**
**No. 13536      C. Creed McGinley, Judge**

---

**No. W2004-00376-CCA-R3-CD  - Filed July 19, 2005**

---

This is a direct appeal from convictions on a jury verdict of sale of a Schedule II controlled substance, a Class C felony, and sale of a Schedule III controlled substance, a Class D felony. See Tenn. Code Ann. § 39-17-417(c)(2) and (d)(1). The trial court determined the Defendant to be a Range II, multiple offender and imposed nine- and seven-year sentences to be served concurrently in the Tennessee Department of Correction (TDOC). The Defendant argues three issues on appeal: 1) the chain of custody was not sufficiently established to admit into evidence the drugs involved in the sales; 2) the two separate drug sale charges should have been merged into a single conviction; and 3) the sentences imposed were excessive due to the trial court's failure to consider a mitigating factor. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Victoria L. DiBonaventura, Paris, Tennessee (at trial); H. Reid Poland, III and Gregory D. Smith, Clarksville, Tennessee (on appeal), for the appellant, Linda Nell Culver.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Robert Radford, District Attorney General; and Steve L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In January of 2003, the Defendant, Linda Culver, operating out of her home in Paris, sold two different types of prescription strength pain killers to a confidential informant working with the Henry County Sheriff's Office. In July of 2003, the Defendant was indicted by a Henry County

grand jury on two drug related charges: sale of a Schedule II controlled substance, Oxycodone,[1] and sale of a Schedule III controlled substance, Dihydrocodeinone.[2] The Defendant received a jury trial in October of 2003.

At trial, the Director of Criminal Investigations for the Henry County Sheriff's Office, Officer Damon Lowe, testified that he was approached by Mr. Eric Pack in January of 2003 about assisting in undercover drug operations. Mr. Pack, a known drug offender in the area, stated that he needed money. According to Officer Lowe, the use of confidential informants in such operations is common, and they are usually paid $50 for orchestrated "buys" of a misdemeanor quantity, and $100 for a buy of a felony amount of a controlled substance. Mr. Pack was employed by the Henry County Sheriff's Office as a confidential informant in approximately eleven sting operations conducted in Henry County in early 2003, one of which resulted in the arrest and conviction of the Defendant in this case.

Officer Lowe further testified that he searched Mr. Pack, his girlfriend, and their truck both before and after the undercover operation.[3] Mr. Pack wore a wireless body mike capable of broadcasting audio to Officer Lowe's vehicle and also carried a small concealed tape recorder as a "backup" measure.[4] Officer Lowe testified that he observed Mr. Pack from his vehicle during the entire operation, except when Mr. Pack was inside the Defendant's house, and even then he heard every word that was said through the wireless audio system.

Eric Pack testified that he had known the Defendant for several years and was related through marriage. He also knew she sold painkillers. Because Mr. Pack owed the Defendant money, he was given $140 by the Henry County Sheriff's Office: $100 to pay down on his debt so the Defendant would be willing to deal with him, and $40 to purchase two forty milligram tablets of Oxycontin. Mr. Pack stated that when he asked for the drugs the Defendant informed him she did not have two forty milligram tablets, but she was willing to sell him two twenty milligram tablets of Oxycontin and two ten milligram tablets of Lortab. Mr. Pack purchased the drugs offered by the Defendant.

After the buy, Mr. Pack met Officer Lowe at a predetermined location and handed him the four pills he purchased from the Defendant. Officer Lowe testified that he immediately put the four pills into an evidence bag, logged the Defendant's name on it, and secured it in his vehicle. Upon

---

[1]This controlled substance is also known by the brand name Oxycontin.

[2]This controlled substance is also known by the brand name Lortab.

[3]For reasons not fully explained in the record, Mr. Pack's girlfriend required that she accompany Mr. Pack on all of his undercover operations.

[4]The record reveals that the audio broadcast to Officer Lowe's vehicle was heard by him live and also taped. Both tapes, the one originating from Officer Lowe's position and one from the recorder concealed on Mr. Pack, were admitted into evidence.

reaching the station, Officer Lowe completed the information on the bag, sealed it with evidence tape, initialed the seal, and then transferred it to the evidence room.

Officer William Vandiver of the Henry County Sheriff's Office testified that the four pills were logged into the evidence room on March 10, 2003. He also stated that the pills, still sealed in the evidence bag, were given to Officer Wyrick that same day for testing. Officer Scott Wyrick, a drug investigator with the Henry County Sheriff's Office, testified that on March 10, 2003, he logged the four pills out of the evidence room for the purposes of having them tested at the crime lab. He gave the evidence to Officer Billy Hicks for transport to the crime lab. Officer Billy Hicks, a Transport Officer with the Henry County Sheriff's Office, testified that he didn't remember transporting the specific evidence at issue in this case, but that he routinely transports evidence back and forth between his office and the crime lab.

Brian Eaton, a Special Agent Forensic Scientist with the Tennessee Bureau of Investigation (TBI), testified that he analyzed the four pills he received from the Henry County Sheriff's Office. He stated that the two white tablets tested positive for Dihydrocodeinone, a Schedule III controlled substance, and the two pink tablets tested positive for Oxycodone, a Schedule II controlled substance.

At trial, the Defendant admitted that the conversation contained in the two tapes was an accurate representation of what occurred, but nonetheless claimed she did not sell Mr. Pack four pills. While her testimony at trial was prone to rambling and not always entirely clear, it appears the Defendant claimed that it was Mr. Pack who offered her three Lortab pills, then "took one back." The Defendant also stated that Mr. Pack owed her money, and attempted to pay off some of his debt with cash and some with Lortab pills. At the conclusion of the trial, the Jury found the Defendant guilty of both counts as charged in the indictment.

The Defendant received a sentencing hearing in November of 2003, at the conclusion of which she was determined to be a Range II, multiple offender and sentenced to concurrent sentences of nine and seven years. The Defendant timely filed a motion for a new trial. Following an evidentiary hearing in January of 2004, the trial court denied the Defendant's motion for a new trial. A notice of appeal was properly filed on February 17, 2004, but the appeal was dismissed by this Court in January of 2005, after the Defendant's counsel was found in contempt of court. The Defendant obtained new counsel, and her appeal was reinstated in February of 2005.

**ANALYSIS**

The Defendant now claims the trial court erred in three respects. First, the Defendant argues that the trial court abused its discretion when it ruled the chain of custody had been sufficiently established to admit into evidence the four pills the Defendant was convicted of selling. Second, the Defendant asserts the trial court erred "in not merging the two counts into a single conviction pursuant to the 24-hour merger rule." Finally, the Defendant argues that the trial court erred in imposing an excessive sentence by failing to mitigate based upon the Defendant's commission of the crime to provide "necessities" for her family.

## I. Chain of Custody

The Defendant argues that the trial court abused its discretion when it ruled that the chain of custody of the four pills had been sufficiently established from the time of the "alleged" sale to the trial, and therefore the admission of the narcotics into evidence is reversible error. The Defendant points out that the four pills were obtained on January 21, 2003, but not officially logged into the evidence room until over a month later on March 10, 2003. Additionally, Officer Lowe testified that he did not seal the bag nor fully mark it until after he returned to the station. Thus, the Defendant argues, the six-week break in the chain of custody during which the evidence was unsecured and unaccounted for should have excluded the pills from being admitted into evidence at trial.

In order for tangible material to be admitted into evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody. State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). The purpose of the chain of custody requirement is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993). However, this Court has also ruled that the State is not required to "establish facts which exclude every possibility of tampering," but rather must establish circumstances that "reasonably assure the identity of the evidence and its integrity." State v. Kilpatrick, 52 S.W.3d 81, 87 (Tenn. Crim. App. 2000). In other words, the chain of custody rule "does not require absolute certainty of identification." Id. (citing Ritter v. State, 462 S.W.2d 247 (Tenn. Crim. App. 1970)). Rather, "[r]easonable assurance, rather than absolute assurance, is the prerequisite for admission." Id.

We begin our analysis by first noting that the standard of review for this issue is one of "sound discretion of the trial court, and the court's determination will not be disturbed in the absence of a clearly mistaken exercise of such discretion." Id.; see also State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987). In its order denying the Defendant's motion for a new trial, the trial court stated:

> Concerning the chain of custody, the record in this case would clearly show that the same drugs that were examined by the lab were the drugs that this officer [Officer Lowe] testified he purchased by this person. They were clearly marked, and they were in the custody of the police or evidence lab or technician during the entire time.

We conclude that the record on appeal supports the trial court's findings.

It appears that the time between the date the drugs were first obtained and the date they were logged into the evidence room was approximately six weeks. During this time the evidence was unaccounted for in the Henry County Sheriff's Office records. The Defendant has nevertheless failed to point to any evidence which suggests the integrity of the evidence was impugned during this time. Officer Lowe testified that he sealed the four pills into an evidence bag the same day they were collected, and the officer who logged it into the evidence room and the officer who checked it out for transport to the crime lab also testified that the pills were sealed in the evidence bag while in their

custody. The forensic scientist at the TBI crime lab testified that the evidence bag was sealed when he received it.

Accordingly, we find the integrity of the evidence was not significantly compromised by the procedures exercised by the Henry County Sheriff's Office or the TBI. The record establishes reasonable assurance that the evidence admitted at trial was the same substance purchased from the Defendant, and was not tampered with. Therefore, we conclude that the trial court did not abuse its discretion in determining that the chain of evidence was sufficient to admit the four pills into evidence at trial. This issue is without merit.

## II. Merger

The Defendant also asserts that the trial court erred in not merging the two counts into a single conviction. The Defendant argues that the "24-hour rule"[5] requires that simultaneous crimes must be merged into a single event, citing as an analogy the Anthony rule, which requires separate charges of robbery and kidnapping to be "merged" into a single offense if the facts demonstrate that the kidnapping was merely incidental to the robbery. See State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).[6] Thus, the Defendant argues, because her simultaneous sale of all four pills was a single act, with a single intent, it should be considered a single crime.

We begin our analysis by first noting that the Defendant failed to raise her merger issue at trial or in her motion for a new trial. Our rules of appellate procedure require that "in all cases tried by a jury, no issue presented for review shall be predicated upon an error . . . upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); see also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial). Additionally, Tennessee Rule of Appellate Procedure 36(a) instructs this Court that it is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." These procedural rules support our long-standing policy of refraining from finding a trial court to have erred in matters not brought to its attention at trial or through a motion for new trial. Nonetheless, we elect to examine this issue on the merits, considering the Defendant has inferred[7] a violation of her constitutional rights of due process and/or to be free from double jeopardy in prosecution.

---

[5]The Defendant failed to cite to any authority pertaining to what she terms the "24-hour rule."

[6]We believe "merge" is a misnomer. Anthony more accurately precludes on due process grounds a conviction for a kidnapping along with a robbery conviction under certain factual circumstances.

[7]While the Defendant argued in her appellate brief that the two charges should have been merged, she never expressly alleged a double jeopardy or due process claim.

The Tennessee Supreme Court long ago held that the sale of two separately scheduled controlled substances constitutes two separate and distinct offenses, and therefore would permit two separate convictions. State v. Campbell, 549 S.W.2d 952, 955 (Tenn. 1977). The court held that because "the sale of each controlled substance 'requires proof of an additional fact which the other does not,' viz., the particular 'schedule' identity of the controlled substance sold," two separate convictions are proper. Id. (citing Blockburger v. United States, 284 U.S. 299 (1932)).

In the case at hand, the Defendant was charged with and convicted of selling Oxycodone, a Schedule II drug, see Tenn. Code Ann. § 39-17-408(b)(1), and Dihydrocodeinone, a Schedule III drug, see Tenn. Code Ann. § 39-17-410(e). Because the Defendant sold two different types of controlled substances as outlined in different drug schedules within Tennessee's criminal statutes, she committed two separate and distinct acts regardless of the fact that she sold all four pills at the same time. See Campbell, 549 S.W.2d at 955. Accordingly, the Defendant's two convictions are proper and do not violate double jeopardy or due process. This issue is without merit.

## III. Excessive Sentence

In her final issue on appeal, the Defendant asserts that the trial court imposed excessive sentences because it failed to mitigate based upon the factor that her crimes were "motivated by a desire to provide necessities" for herself or her family. See Tenn. Code Ann. § 40-35-113(7). The Defendant argues that the claims she made at the sentencing hearing--that she sold the drugs to buy "necessary medicines" for herself and "to feed her grandchild"--were "uncontradicted and unchallenged." Thus, the Defendant argues, the trial court erred when it "did not address this sentencing mitigator," and therefore her sentences should now be reduced.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence

after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

In calculating a sentence for a Class C or D felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e). The sentence for a Class C felony as a Range II, multiple offender is "not less than six (6) nor more than ten (10) years," while the sentence for a Class D felony in the same range is "not less than four (4) nor more than eight (8) years." Tenn. Code Ann. § 40-35-112(b)(3) and (4). Therefore, the Defendant's presumptive sentence is the minimum in her range, or six years for the Class C felony sale of a Schedule II drug, and four years for the Class D felony sale of a Schedule III drug. However, the weight to be afforded any enhancement or mitigating factor is left to the trial court's discretion. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

We initially note that, contrary to the Defendant's claim in her appellate brief, the trial court did address in some respects mitigating factor (7), stating for the record: "I'm broadly considering her significant health problems as far as mitigating factors, but I see that as no excuse to allow the commission of any criminal offense." The trial court then reiterated why it applied "great weight" to enhancement factor (2), the Defendant's criminal history, noting that her prior drug sale convictions were "almost identical in nature to those convictions that she stands convicted of here." The trial court further noted: "She's previously done this. She's been in prison. Then she was put on probation for time served, and then she's back out in the community and obviously not rehabilitated in any form or fashion or learned anything concerning her prior history within the Court system."

The presentence report reflects that at the time of sentencing the Defendant was 56 years old and single. She dropped out of school in the tenth grade, and she reported significant health problems. Although she stated she had been disabled since 1987, she has sometimes worked as a cook, barmaid or housekeeper. She has been married and divorced three times and has several children and grandchildren. She has four prior felony drug convictions.

The Defendant has failed to meet her burden of showing that the trial court's sentences were improper. While the Defendant did give testimony that she needed money for medical bills and to provide for her grandchild, the trial court noted that she had no problem raising $5,000 for bail the very same day she was convicted. Additionally, the Defendant stated at the sentencing hearing that if she had it to do over again she would have found other ways to pay her bills without resorting to selling drugs. Accordingly, we find that the trial court did not err in refusing to apply mitigation factor (7). Even if mitigation factor (7) was applicable, we conclude that the Defendant's history of drug sale convictions supports the sentences imposed. This issue has no merit.

## CONCLUSION

Based on the aforementioned reasoning and authorities, we affirm the judgments of the trial court as to both the Defendant's convictions and sentences.

_____
DAVID H. WELLES, JUDGE